IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ENBRIDGE PIPELINES (OZARK), LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-117-TCK-PJC |
| | ) | |
| DAVID A. BAILEY, | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss (Doc. 8).

### I.      Background

Plaintiff Enbridge Pipelines (Ozark) LLC ("Enbridge") owns and/or operates approximately 17,600 miles of crude oil pipelines in the United States. Defendant David A. Bailey ("Defendant") owns property in Creek County, Oklahoma ("Property"). A Right-Of-Way Grant ("ROW Grant"), which covers and affects the Property was originally given in 1948 to the Texas-Empire Pipeline Company by Bailey's predecessor in interest, Marcus Wilson McGuire. Enbridge is the successor to the rights of the Texas-Empire Pipeline Company. The ROW Grant authorizes Enbridge to "lay, operate and maintain a pipe line for the transportation of oil, gas, gasoline, or other liquids" on the Property. Pursuant to the ROW Grant, Enbridge and its predecessors have installed, operated, and maintained a pipeline that travels across the Property ("Pipeline"). Enbridge uses the Pipeline to transport up to 50,000 barrels of crude oil a day.

Enbridge alleges that, in recent months, Defendant has used bulldozers to deposit material on the right-of-way and over the Pipeline. Such materials include dirt, rock, concrete, brick, steel, and other construction debris ("fill material"). Enbridge claims that the placement of fill material

has interfered with its ability to inspect, maintain, and operate the Pipeline. Enbridge also claims

that the fill material "may endanger the integrity of the Pipeline," "will interfere with and delay any

necessary emergency response activities," and that Defendant has prevented Enbridge from "its

lawful use and enjoyment of the [right-of-way]" and "interfered with Enbridge's lawful business."

(Pet. ¶¶ 14,16, and 22.) Enbridge's Complaint seeks injunctive and declaratory relief against

Defendant, prohibiting Defendant from depositing additional materials on the right-of-way and

Pipeline and requiring Defendant to remove all fill material or, in the alternative, permitting

Enbridge to remove such material.

## II.    Discussion

In his Motion to Dismiss, Defendant moves to dismiss for lack of subject matter jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1),[1] arguing that the amount in controversy is less

than $75,000.00. The Complaint alleges as follows: "The acts of [Defendant] as described herein

will require Enbridge to remove and dispose of significant amounts of Fill Material and to otherwise

move and contour Fill Material adjacent to the Right of Way. Such activities, upon information and

belief, will cost Enbridge well in excess of $75,000." (Pet. ¶ 23.)

### A.    Rule 12(b)(1) Standard

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one

of two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "First, a

---

[1] Defendant's motion cites Rule 12(b)(2). (*See* Def.'s Mot. to Dismiss 1.) However, the Court assumes that this citation is in error because Rule 12(b)(2) concerns motions to dismiss based on lack of personal jurisdiction, and Defendant's Motion to Dismiss is clearly related to lack of subject matter jurisdiction. (*See* Def.'s Mot. to Dismiss 1 (stating Defendant "moves [the Court] to dismiss this case for lack of subject matter jurisdiction because the amount in controversy is less than $75,000).)

moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction." *Id.* "In reviewing a facial attack, the district court must accept the allegations in the complaint as true." *Id.* "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Id.* "In reviewing a factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995)). "In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225. Both parties have attached evidence outside the pleadings regarding the amount in controversy. Thus, the Court construes the attack as factual.

### B.       Legal Certainty Rule

"The rule governing dismissal for want of jurisdiction in federal court is that, unless the law provides otherwise, the amount claimed by the plaintiff controls if the claim is apparently made in good faith." *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* "The burden is on the party asserting jurisdiction to show it is not a legal certainty that the claim is less than the jurisdictional amount." *Id.* Notably, the Tenth Circuit has explained that "it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied" and "[t]here is a strong presumption favoring the amount alleged by the plaintiff." *Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1216 -17 (10th Cir. 2003).

3

**C.      Standard for Assessing Amount in Controversy for Declaratory and Injunctive Relief**

In cases seeking declaratory and injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Lovell v. State Farm Mut. Auto Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (internal citations omitted). "The Tenth Circuit has followed what has commonly been referred to as the 'either viewpoint rule' which considers either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum." *Id.* (citing *Justice v. Atchison, Topeka and Santa Fe Ry. Co.*, 927 F.2d 503, 505 (10th Cir.1991)); *see Baker v. Sears Holdings Corp.*, 557 F. Supp. 2d 1208, 1212 (D. Colo. 2007). When considering whether to add the value of declaratory relief to the amount in controversy, courts have held that the right to future payments may not be overly speculative. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1269 (11th Cir. 2000) (finding value of injunctive relief was too speculative and immeasurable to be included in determining the amount in controversy); 32A Am. Jur. 2d *Federal Courts*, § 994. Finally, "courts appear willing to ease the plaintiff's burden of proving jurisdiction" in cases involving injunctive relief. *Taylor v. Sandoval*, 442 F. Supp. 491, 495 (D. Colo. 1977) (citing *Sanchez v. Taylor*, 377 F.2d 733, 736 (10th Cir. 1967) and *Martinez v. Richardson*, 472 F.2d 1121 (10th Cir. 1973)).

**D.      Value of Amount in Controversy in Instant Case**

Defendant argues that the cost associated with removing the fill material is less than $75,000.00.[2] Specifically, Defendant states that prior to this suit being filed, he met with Enbridge

---

[2] The Court notes that in his Answer, Defendant "admitted" that the amount in controversy exceeded $75,000.00 (*See* Def.'s Answer ¶ 4.) However, this fact does not establish that the Court has diversity jurisdiction over this matter. *Cabral v. Willard*, 333 F. Supp. 2d 1108, 1110-11 (D. Kan. 2003) (rejecting argument that defendant's motion to dismiss

representatives in an effort resolve this dispute.  Defendant represents that after Enbridge told him

"specifically what debris Enbridge wanted moved and how it would be done," Defendant "obtained

two (2) bids for the work from reputable contractors.  One contractor would charge $6,000.00 and

the other $11,785.00."  (Def.'s Mot. to Dismiss 2.)  Based on these bids, Defendant argues that the

amount in controversy is not met.

In response, Enbridge maintains that "it has recently determined that it will actually cost

$180,000 to safely remove and properly dispose of the fill material."  (Pl.'s Resp. to Mot. to Dismiss

2.)  In support of this figure, Enbridge attaches an estimate prepared by Max Grier ("Grier") of Mills

Construction and Welding, Inc. ("Grier Estimate," Ex. C to Pl.'s Resp. to Mot. to Dismiss.)  The

Grier Estimate, dated April 10, 2009, provides the following break-down of costs:

> Equipment and labor to load and haul approximately 3.640 tons of rock, dirt, asphalt
> and mixture of other material — $80,000.00
>
> Landfill Charge $22.00 per ton –
> American Environmental, 117 West Ave., Sand Springs, OK — $80,000.00
>
> Equipment and labor to uncover, check and recoat line and recover pipeline —
> $20,000.00

(*Id.*)  Enbridge also argues that, in addition to considering the cost of removing and disposing of the

fill material, the Court must also consider the value of Enbridge's right-of-way in assessing the

amount in controversy.  Enbridge cites *Columbia Gas Transmission Corporation v. Tarbuck*, 62

F.3d 538 (3d Cir. 1995), in support of this assertion.

---

for lack of subject matter jurisdiction should be denied because defendant admitted in his
Answer that amount in controversy exceeded $75,000.00) (citing *Huffman v. Saul Holdings, Ltd.
P' ship*, 194 F.3d 1072, 1079 n.4 (10th Cir. 1999) (rejecting a similar argument and stating that
"the parties cannot 'concede' jurisdiction by agreeing that the jurisdictional amount requirement
has been satisfied.  The court's obligation to determine the presence of the appropriate amount in
controversy is independent of the parties' stipulations")).

*Columbia Gas* presents facts similar to those in the instant case.  In *Columbia*, the defendant placed four feet of topsoil on the right of way over plaintiff's pipeline.  Defendant provided estimates that it would cost approximately $4,000.00 to remove the topsoil and, on this basis, claimed that the district court lacked subject matter jurisdiction because the amount in controversy requirement was not met.  The district court disagreed and ruled in plaintiff's favor.  On appeal, the Third Circuit affirmed the district court's decision and, in so doing, provided helpful guidance in assessing the amount in controversy in this case.  Specifically, the Third Circuit relied on the Supreme Court's decision in *Glenwood Light Company v. Mutual Light Company*, 239 U.S. 121 (1915), in finding that "in diversity suits for injunctions the cost of compliance is not the definitive measure of the amount in controversy.  Rather, we measure the amount in controversy by the value of the rights which the plaintiff seeks to protect." *Columbia Gas*, 62 F.3d at 539. In assessing the "value of the rights which the plaintiff" sought to protect, the court looked to the cost of protecting plaintiff's right-of-way, either by raising the pipeline to the proper depth within the existing rights of way or by re-routing the pipe on different property. *Id.* at 542.  The court also considered the fact that, because of the topsoil covering its pipeline, plaintiff was unable to operate its pipeline in compliance with state and federal occupational safety regulations. *Id.* at 543.  Ultimately, the court held that "because it [was] not legally certain that the value of [the rights plaintiff sought to protect] [was] less than [the jurisdictional amount], section 1332 was satisfied, thereby meeting federal jurisdictional requirements." *Id.* at 541.

Similar to the plaintiff in *Columbia Gas*, Enbridge is not merely seeking to have the fill material removed but is also seeking to protect its rights under the ROW Grant. (*See* Pet. Prayer for Relief.)  Enbridge asserts that it is unable to continue to operate its pipeline "with the right of way

in its current state" and further argues that it should not "have to operate under the threat of future encroachments and damage." (Pl.'s Resp. to Def.'s Mot. to Dismiss 8.)  Therefore, in assessing the amount in controversy, Enbridge cites not only the $180,000.00 cost of removing and disposing of the fill material but also the costs associated with a potential loss of revenue.

The Court concludes that Enbridge has demonstrated that the requested declaratory and injunctive relief is not, to a legal certainty, less than $75,000.00  Although the precise cost of removing and disposing of the fill material is disputed by the parties, the question presented is not the actual cost that will be incurred.  Rather, it is whether Enbridge has shown that it is not a legal certainty that it could not recover the amount in controversy.  *See Adams*, 225 F. 3d at 1183.  The Grier Estimate alone, which contends that the cost of removing and disposing of the fill material will approximate $180,000.00, demonstrates that it is not a legal certainty that the amount in controversy is less than the jurisdictional amount.  This conclusion is additionally supported when considered in conjunction with the value of the rights that Enbridge is seeking to protect. *See Columbia Gas*, 62 F.3d at 539; *see also Texas Eastern Transmission Corporation v. Giannaris*, 818 F. Supp. 755, 759 (M.D. Pa. 1993) (finding amount in controversy requirement met in suit by pipeline company to enjoin interference with pipeline right-of-way based on value of right-of-way, public interest in maintaining safe pipeline, and potential cost of closing pipeline).   Further, this is not a situation where there is a clear limit to recovery, such as the existence of an applicable contract term or a legal bar to recovery. *See Woodmen of World Life Ins. Society*, 342 F.3d at 1216-17 (stating "[g]enerally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse

of federal court jurisdiction"). The Court therefore finds that it has subject matter jurisdiction over

the instant case and Defendant's Motion to Dismiss (Doc. 8) is denied.


**ORDERED this 2nd day of July, 2009.**


_____
**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**